UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RAMASWAMY VENUGOPAL,

        Plaintiff/Counterclaim Defendant,

        -vs-                              07-CV-00484C

SHARADHA TERRY PRODUCTS, LTD.,

        Defendant/Counterclaim Plaintiff.

---

Defendant Sharadha Terry Products, Ltd. has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction (Item 10). Alternatively, defendant seeks to have venue transferred to the Southern District of New York. For the reasons that follow, the motion is denied.

**BACKGROUND and FACTS**

Plaintiff filed a complaint on July 26, 2007 alleging the violation of the Lanham Act, 17 U.S.C. § 1051, *et seq*. Specifically, plaintiff alleges that he is an individual with a residence and office in India, while defendant is an Indian corporation which, upon information and belief, does business in the Western District of New York (Item 1, ¶¶ 2, 3, 5). Plaintiff states that he is the owner of U.S. Trademark Application Serial 78/404,785 for the word "NANO COTTON." *Id.,* ¶ 8. Plaintiff alleges that on or about May 11, 2007, he received a cease and desist letter from defendant stating that plaintiff's use of "NANO COTTON" would infringe on the defendant's rights in its trademark "MICRO COTTON." *Id.,* ¶ 9. Plaintiff also states that he "wishes to commercialize products using" the "NANO COTTON" trademark, and has no intention to withdraw the application or stop using the

mark. *Id.,* ¶ 10. Plaintiff seeks a declaration that its use of the "NANO COTTON" trademark in connection with towels, bed linens, and other textiles does not and would not infringe on defendant's "MICRO COTTON" marks and that the "MICRO COTTON" marks are invalid as they are merely descriptive and generic.

Defendant filed its motion to dismiss on April 21, 2008 (Item 10). It argues that this court lacks subject matter jurisdiction as there is no case or controversy under Article III of the Constitution. Alternatively, defendant contends that venue should be transferred to the Southern District of New York. In support of the motion to dismiss, defendant submitted a copy of the cease and desist letter dated May 11, 2007. *Id.,* Exh. 1. In that letter, defendant stated that it was aware that plaintiff filed an intent-to-use application for the trademark "NANO COTTON" for towels, bed linens, mixed fiber-fabrics, and textiles but had not yet begun to use the mark. Defendant expressed its concern that plaintiff's anticipated use of "NANO COTTON" on goods that are identical to those for which defendant uses the mark "MICRO COTTON" would be likely to cause confusion and subject plaintiff to liability for trademark infringement and unfair competition. *Id.* Defendant asked plaintiff to confirm that no use had been made of the "NANO COTTON" mark, immediately discontinue any current use, and abandon the "NANO COTTON" application. *Id.*

On April 28, 2008, plaintiff filed a memorandum of law in opposition to the motion (Item 12). In response to the motion, plaintiff argues that the cease and desist letter, and its threat of imminent legal action, provides the basis for his declaratory judgment action. Defendant filed a reply on May 12, 2008 (Items 13, 14).

**DISCUSSION**

**1. Motion to Dismiss**

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when the district court does not have statutory or constitutional authority to adjudicate the matter. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When a complaint is challenged pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, a court must accept the factual allegations made in the complaint as true, drawing reasonable inferences in favor of the plaintiff. *See Lunney v. United States,* 319 F.3d 550, 554 (2d Cir. 2003).

Plaintiff brought this action seeking a declaratory judgment. The Declaratory Judgment Act, in relevant part, states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). When making its determination as to whether a declaratory judgment is proper, the court must ask the following: 1) whether the judgment serves a useful purpose in explaining or settling the legal issues involved; and 2) whether a judgment would finalize the controversy and offer relief from uncertainty. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)); *see also Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991), *cert.*

*denied,* 501 U.S. 1218 (1991).  This inquiry is necessarily one of degree and affords the district court great discretion in making a determination.  *See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996).

The Supreme Court has not articulated a bright-line rule for determining when a case satisfies the controversy requirement. In fact, it has stated that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Claims that involve "contingent future events that may not occur as anticipated, or indeed may not occur at all," will not suffice. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quotation omitted).  Rather, "[t]he disagreement . . . must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Jenkins v. United States*, 386 F.3d 415, 417-18 (2d Cir. 2004) (quotation omitted).

Even after a plaintiff demonstrates that the case or controversy requirement has been met, the permissive language of § 2201(a) gives a district court discretion to determine whether or not it should actually exercise its declaratory judgment authority. A court must, however, exercise that authority "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).

4

Until recently, courts used a two-pronged test to determine whether an "actual controversy" existed in patent declaratory judgment actions. *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed.Cir. 2007).  In order to prove an actual controversy, a plaintiff had to establish that (1) it had actually produced or was prepared to produce an allegedly infringing product, and (2) the defendant's conduct created an objectively "reasonable apprehension" that the defendant would initiate suit if the plaintiff continued the allegedly infringing activity*. Id.; see also Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1334-36 (Fed.Cir. 2007).  However, the Supreme Court recently rejected the "reasonable apprehension" test in favor of a test focusing on the "totality of the circumstances."  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11  (2007); *see also Surefoot LC  v. Sure Foot Corp.*, 531 F.3d 1236, 1240-42 (10th Cir. 2008) (concluding that the reasonable apprehension of imminent suit test is no longer good law after *MedImmune*); *SanDisk Corp. v. STMicroelectronics., Inc.,* 480 F.3d 1372, 1380 (Fed.Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test."); *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F.Supp.2d 376, 382 (S.D.N.Y. 2007) (noting that the Supreme Court "has suggested that a lower threshold is required to find a case or controversy under the Declaratory Judgment Act").

In *MedImmune,* the Supreme Court found an actual controversy even though plaintiff had complied with the defendants' demands by paying royalties under protest, had not infringed any of defendants' rights, and therefore had no reasonable fear of imminent suit.  *See MedImmune*, 549 U.S. at 128, 137.  The Court held that neither the Declaratory

5

Judgment Act nor Article III requires a plaintiff to expose himself to liability before bringing a declaratory judgment action. *See id.* at 137. Rather, so long as "[t]he factual and legal dimensions of the dispute are well defined" and "nothing about the dispute would render it unfit for judicial resolution," jurisdiction is not defeated by a party's decision to refrain from taking some action and thus "make[ ] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent." *Id.* at 128, 137; *see also SanDisk,* 480 F.3d at 1381 ("[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights."). The true test is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

Here, plaintiff has filed an intent to use application for the "NANO COTTON" trademark and has stated that he "wishes to commercialize products" using the trademark. Defendant has asserted, in a cease and desist letter to plaintiff, that it believes that any use of the "NANO COTTON" trademark on bedding, towels, and other textiles would infringe on its use of its "MICRO COTTON" trademark and subject plaintiff to liability for trademark infringement and unfair competition. The "factual and legal dimensions" of this dispute are well defined. The court will be asked to decide whether plaintiff will be allowed to use the "NANO COTTON" mark on goods that are substantially similar to those sold under the "MICRO COTTON" trademark, and whether "MICRO COTTON" is a valid trademark.

Plaintiff need not risk suit for infringement by engaging in the planned commercial activity before he can obtain a declaration of his rights. *See Russian Standard Vodka (USA),* 523 F.Supp.2d at 383 (the threat of legal action for plaintiff's future conduct satisfies the "actual controversy" requirement of the Declaratory Judgment Act); *see also SanDisk Corp.,* 480 F.3d at 1381 (a party need not risk a suit for infringement by engaging in the alleged activity before seeking a declaration of its legal rights). As a declaratory judgment will serve a useful purpose in clarifying the legal relations in issue, and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, the court will exercise its discretionary authority under the Declaratory Judgment Act.

**2. Motion for Change of Venue**

Alternatively, defendant argues that venue should be transferred to the Southern District of New York for the convenience of parties and witnesses, none of whom reside in the Western District of New York. Both parties are residents of India, and the case could have been brought in any District Court.

Tile 28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Whether to transfer a case under § 1404 lies wholly within the broad discretion of the district court. The court must first determine whether the action could have been brought in the district to which the defendant seeks to transfer the case. *Herbert Ltd. P'ship v. Electronic Arts Inc.,* 325 F.Supp.2d 282, 285 (S.D.N.Y. 2004). Here, it is not disputed that the case could have been brought in the Southern District of New York. In determining whether transfer is appropriate, the court

may consider the following factors: (a) the convenience of witnesses; (b) the convenience of the parties; (c) the locus of operative facts; (d) the location of relevant documents and relative ease of access to sources of proof; (e) the availability of process to compel the attendance of unwilling witnesses; (f) the forum's familiarity with the governing law; (g) the relative financial means of the parties; (h) the weight afforded plaintiff's choice of forum; and (i) trial efficiency and the interests of justice. *Ravenwoods Invest. Co. v. Bishop Capital Corp.*, 2005 WL 236440, *3 (S.D.N.Y. February 1, 2005); *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *3 (S.D.N.Y. May 12, 2003). No one factor is controlling or determinative; rather the court must, in its discretion, balance all of the factors in making its decision. *Praxair, Inc. v. Morrison Knudsen Corp.*, 2001 WL 118585, *2 (W.D.N.Y. February 6, 2001).

Here, the Western District of New York is equally inconvenient to both parties. The locus of operative facts is in India, as are documents and witnesses. Defendant argues that it would be more convenient to try the case in the Southern District, as the parties and their witnesses must travel through New York City on the way to Buffalo. Plaintiff contends that it is just as convenient to travel to Buffalo through Toronto, and the only party who is inconvenienced is defense counsel, a New York City firm.

In ruling on a motion to transfer venue, the trial court is to give the plaintiff's choice of venue "substantial consideration." *Warrick v. Gen. Elec. Co. (In re Warrick)*, 70 F.3d 736, 741 (2d Cir. 1995) (quoting *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 444 (2d Cir. 1966)). A plaintiff's choice of venue "will not be disturbed unless the balance of factors weighs strongly in favor of granting the transfer." *Worldcom Techs., Inc. v. ICC*

*Inteleca Commc'ns, Inc.*, 37 F.Supp.2d 633, 638 (S.D.N.Y.1999) (internal quotations omitted). Under the present circumstances, where none of the factors strongly justifies transfer, the court finds that plaintiff's choice of forum should not be disturbed.

## CONCLUSION

The defendant's motion to dismiss the complaint for lack of jurisdiction is denied. The motion to transfer venue to the Southern District of New York is also denied.

A status telephone conference with counsel shall be held on June 24, 2009 at 11:15 a.m. The court shall initiate the call.

So ordered.

_____\s\ John T. Curtin\_\_\_
JOHN T. CURTIN
United States District Judge

Dated: May 18 , 2009
p:\opinions\2007\07-484.may709